Ludlow v. Strong.

GEORGE C. LUDLOW, receiver, et al.

*v.*

WOODBRIDGE STRONG et al.

1. A stakeholder or custodian of a fund who makes a contract with a claim-ant to the fund for a payment to the claimant of a portion thereof, in consideration of retaining the balance for himself, cannot, in a suit on the contract and in the absence of express provisions therein, require the complainant to· bring in other claimants to the fund or require an adjudication upon the rights. of these claimants, or other possible claimants to the fund, as precedent to a. right of recovery under the contract.

2. The contract in this case held not to contain such provisions for adjudi-cating upon the rights of other claimants to the fund.

3. The stakeholder cannot impose additional terms or conditions by his. agreement with another claimant to the fund, made subsequent to the contract. and without the consent of the claimant with whom he has contracted.

On final hearing on bill, answer of defendants Strong & Sons,. replication and decree *pro confesso* against defendant Skirm,. receiver.

*Mr. John S. Voorhees*, for the complainants.

*Mr. Alan H. Strong*, for the defendants Strong & Sons.

EMERY, V. C.

The bill in this case is filed to compel the performance of an agreement in writing made by Strong & Sons, three of the de-fendants, with the People's National Bank of New Brunswick, one of the complainants, dated May 27th, 1890, and relating to· the assignment of a judgment owned by the bank to Strong &. Sons, for certain uses and purposes specified in the agreement.. The general purpose of the agreement was the application of a sum of money ($526.38) in Strong & Sons' hands to the payment of the judgment held by the bank, and to carry out this. purpose, the agreement provided, among other things, that the

bank should assign the judgment to Strong & Sons, whereupon the latter were to apply the moneys on account of the judgment and then at once commence supplementary proceedings on the judgment to make the application "legal and safe;" and when this was done the agreement provided that Strong & Sons would reassign the judgment to the bank and pay them sixty per cent. of the moneys, retaining forty per cent. for their compensation.

The bank now files this bill to obtain the payment of the money and the reassignment of the judgment, joining with it, as complainant, the receiver who was appointed under the supplementary proceedings on the judgment taken on the application of Strong & Sons, who are still the holders of the legal title to the judgment.

Strong & Sons had received this money on April 15th, 1890, as the attorneys of one Travers and his judgment creditor, and as to the claims of these persons to the money, the agreement expressly provided that, in order to carry out the agreement between the bank and Strong & Sons, "it will be proper to secure an abandonment of said claim of John Travers and his judgment creditor." This abandonment was procured, all parties being satisfied that Travers and his creditor had no right to the money. The money had been received by Strong & Sons from one Daly, as the judgment debtor primarily liable to John Taylor (the bank's debtor), upon judgments which Taylor had obtained in 1880 against Daly as primarily liable and Travers as secondarily liable. Travers, supposing that these judgments had been paid by him through sales of his property on execution, employed Strong & Sons to collect the amount from Daly by proceedings under the Practice act, section 36, for obtaining the benefit of the judgments as against Daly. Daly, the person primarily liable to Taylor, who did not deny his liability on the judgments, paid the amount of the judgments to Strong & Sons, as attorneys of Travers and his assignee, and the proceedings on behalf of Travers were not prosecuted. While still holding the money in their hands, Strong & Sons ascertained that Travers was mistaken in supposing that the judgments had been paid by the sale of his lands.

Taylor, the judgment creditor of Daly and Travers, had become embarrassed since the recovery of his judgments against Daly, and the fund in Strong & Sons' hands was liable to be made the subject of claims by Taylor's judgment creditors. So far as appears, no claims had actually been made by any persons to the fund up to the date of the agreement in suit. In this posture of affairs and on August 28th, 1890, Strong & Sons made with the bank this agreement now in question. This agreement recited that Strong & Sons had in hand $526.48, as the proceeds of two judgments recovered many years previous by Taylor against Travers and Daly, and that it was collected by them for Travers, on his claim that he, as secondarily liable, was entitled under the statute to collect this money from Daly, who was primarily liable, and that Travers was mistaken, so that this money would appear to belong to Taylor and to be liable to be taken by his creditors. The agreement then provided that the bank should assign their judgment against Taylor to Strong & Sons, and thereupon Strong & Sons should apply said moneys on account of the judgment; "that supplementary proceedings be then at once commenced against John Taylor by the counsel of the bank to make said proceedings legal and safe," and that when this is done,

"said Strong & Sons will reassign said judgment to the bank and pay said bank sixty per cent. of said moneys, retaining forty per cent. for their compensation, the judgment being paid to the extent of the whole amount realized against Taylor."

It was then stated in the agreement "that to accomplish this it will be proper to secure an abandonment of said claim of said John Travers and his judgment creditor." No specific mention of Daly, who paid the money to Strong, or of Taylor's creditors, or any other claimants than Travers and his creditors, to the fund, is made in the agreement, but, in reference to other claims, a provision is next added in the agreement,

"that if at any time said money shall be required by any party having a superior right thereto, said bank will return so much thereof as it shall have received, to said Strong & Sons, with legal interest thereon from the time said bank shall receive said money,"

Ludlow v. Strong.

and the agreement concludes with the provision "that in case said proceedings to secure said moneys in the hands of said Strong & Sons shall be unsuccessful, said Strong & Sons will at once reassign said judgment to said bank."

The assignment of the judgment by the bank to Strong & Sons was executed and delivered simultaneously with the agreement, and Strong & Sons, by the agreement itself, acknowledged the receipt of the assignment of the judgment for the uses and purposes mentioned in the agreement.

About the same time, Travers and his assignee (Ellen Mitchell), by writing dated May 27th, 1890 (one day previous to the date of the agreement), formally renounced their right to the money in Strong & Sons' hands, and consented that they might appropriate it as they deemed might be legal and proper.

Immediately after, and on August 29th, 1890, the defendants, Strong & Sons, as the assignees and judgment creditors of John Taylor, under the bank's judgment, presented a petition under the Supplementary Proceedings act (John S. Voorhees, Esq., the counsel of the bank, being named as attorney), and procured an order of that date, for discovery &c., and an injunction order restraining Daly from paying the judgments against him to Taylor or any other person, and also restraining the petitioners (Strong & Sons) from paying the money in their hands to Daly. On this petition, and after the examination of witnesses, an order was made by Chief-Justice Beasley, on May 17th, 1892, appointing the complainant George C. Ludlow the receiver of the property and things in action of the defendants John Taylor and William Brandt, belonging to or held in trust for them or either of them, on the 6th day of October, 1888, being the date of the issuing of the execution in the cause. The complainants, claiming that by this appointment of the receiver all the conditions which Strong & Sons were entitled to require under the contract, had been fulfilled, demanded of Strong & Sons the payment of the amount due to them under the contract. Strong & Sons demanded of the bank indemnity against the claim of one Skirm, who had, in 1888, been also appointed a receiver of Taylor, upon proceedings taken by creditors of Taylor on other

Ludlow *v.* Strong.

judgments (one prior and one subsequent to the bank's judgment), and who had, in October, 1890, notified Strong & Sons that he claimed the money in their hands as such receiver. There is no evidence that, at the time of the making of this agreement, either Strong & Sons or the bank knew of Skirm's appointment as receiver, and, upon receiving this notice, Strong & Sons informed the bank thereof. The bank were willing to give this indemnity against Skirm's claim on receiving the money, but on all the parties (including the receiver) meeting to adjust the matter, a further demand was made by Strong & Sons, as a condition precedent to their payment of the money to the receiver, that the receiver should agree to cancel the judgment obtained against Daly and Travers. The receiver declined to accept the money on this condition, and Strong & Sons then refused to pay over any of the money in their hands, either to the receiver or complainant, and still hold the money.

They based this refusal upon an agreement which they had made with Daly subsequent to the making of the contract with the bank, by which, as they claim, they agreed with Daly that the judgment should be canceled, and received Daly's consent to the use of the money on that express condition. This agreement of Daly's, which is attached to the bill, is not dated, but it is proved to have been made subsequent to the agreement with the bank, and the bank does not appear to have had any notice of it before its execution.

This agreement, signed by Daly, recites the collection of the money by Strong & Sons from Daly and the circumstances of the mistake of Travers, and then further proceeds:

" Whereas, it was and is my wish and intention that said moneys be appropriated to the payment of said judgments [against Daly and Travers], to whomsoever the same may be lawfully owing or payable, now, therefore, I do hereby request the said W. Strong & Sons to pay over the said money to the said John Taylor, or to apply the same as his moneys to their judgment against said Taylor, if they shall lawfully be entitled so to do, in the same manner as though said payment had been originally made for the benefit of said John Taylor, the said John Taylor having consented that the money so placed in the hands of W. Strong & Sons shall be applied towards the payment of the said judgment, and provided the said judgments against John Travers and me shall be canceled of record."

Daly does not appear to have made any demand upon Strong & Sons to cancel their judgment, or for a return of the money to him by reason of the failure to cancel it.

The complainants, the bank and the receiver having brought suit upon the contract, made Skirm as receiver a party defendant, and took a decree *pro confesso* against him, but did not make Daly a defendant, nor the parties whom Skirm represented.

The defendants, by answer and at the hearing, claim that in this suit on this contract, the court should adjudicate upon the respective claims of Skirm, receiver, and of Daly to the money ; that no decree should be given in the absence of Daly (the objection of his non-joinder being expressly raised in the answer), and that they are entitled fairly to hold the money as against the complainants, until the adjudication of a competent court (made in a suit wherein all parties interested in the application of said money are made parties) that a payment of the moneys to the complainant would be a legal and safe payment. An objection was also raised to the jurisdiction of this court on the ground that if the suit is to be rested solely on the contract, it is an action for the payment of money, which should be prosecuted at law.

Upon the facts above stated, established by the admissions in the pleadings and by the proofs, I reach the following conclusions :

*First.* This court has jurisdiction.

Part of the relief asked is the reassignment of the judgment, and the rights of all the parties under the contract could not be justly or equitably settled, except in an action which the parties to the contract, as well as the receiver, are parties. As to the judgment, the agreement and the assignment of the judgment, constituted the defendants Strong & Sons trustees of the judgment, for the purposes and on the terms specified in the agreement, which trust is enforceable in equity.

*Second.* The rights of the bank and of Strong & Sons to the money in the hands of the latter, must be settled upon the basis of the contract between them, and according to its terms. So far as it relates to the appropriation of the money in Strong &

Sons' hands to the complainants' judgment and the claims of any parties thereto, the legal aspect of the contract is substantially that of an agreement between a stakeholder or custodian of the fund on one side, and a claimant to the fund on the other, for a division of the fund between them on certain terms, mutually agreed on. There was nothing unlawful in the making of such contract under the circumstances here proved, but by making such contract, Strong & Sons deprived themselves of the *status* of independent stakeholders, who would have a right to have all conflicting claims to the money settled in an interpleader suit, and on the other hand, the bank, by this contract, gave up its right to claim all of the money in Strong & Sons' hands.

Strong & Sons must therefore rely solely on the contract for their protection against other claims to the money. Their agreement with one claimant for an interest in the fund deprived them of any right to compel any other claimants to interplead, nor have they now, as against the complainant, the right to insist that, in this suit, they shall practically have such interpleader and adjudication for their protection under the contract. Travers having relinquished his claim, as provided by the contract, no other claimant was a necessary party to this suit on the contract. Skirm, however, having been made party defendant without objection, and decree *pro confesso* having gone against him, complainants and defendants are entitled to whatever benefit the decree in this suit may give them.

*Third.* The defendants were not entitled to require from the receiver as a condition precedent to the payment of the money an agreement on his part that he would cancel the judgment against Daly, for the following reasons:

(1) The cancellation of the judgment by the receiver personally was a matter which, if he chose, he could submit to the adjudication of the court which appointed him and to whose orders he is made subject by the statute. *Rev. 394 § 26.*

Strong & Sons, if bound to pay the receiver at all, were bound to pay him without conditions, and the agreement in this suit, the assignment of the judgment under it and their supplement-

ary proceedings estop them from setting up as against the receiver or the bank, that they were not bound to pay or that the money was not held by them in trust for Taylor and payable by them as such.

(2) Strong & Sons had no right, without the bank's consent, to enter into a contract with Daly, which would or might compel the bank to litigate Daly's claim to the money in a suit under the contract against Strong & Sons, nor was it the intention of this contract that, as to any other claimants to the fund than Travers and his creditor, Strong & Sons should have any adjudication of their rights in an action on the contract. The express provision in the contract for repayment of the money in case it should afterwards be required of the Strongs by any person having a superior right thereto, covered both Skirm's and Daly's claim if either made any. It was the only provision of the contract covering that subject, and its express provisions on this subject could not afterwards be extended without the consent of both parties.

The contention of defendants that the provision of the contract that "supplementary proceedings be taken to make said proceedings legal and safe," meant that the money should not be paid over unless the proceedings were "legal and safe," and that, therefore, in order to recover, the bank must, in a suit on the contract, bring in everybody who has made or may make a claim to the money, and that they are not entitled to any money until such adjudication that the payment to the complainant is legal and safe, seems to me to subvert the general intention of the contract by a phrase in it which was a mere statement of the parties as to their object in taking the supplementary proceedings and their opinion of its effect. This phrase has a full and complete effect by such interpretation of its meaning, and thus construed allows the contract to stand.

Equally without foundation is the claim that the supplementary proceedings have not been "successful" in securing the money in Strong & Sons' hands under the last clause of the contract. The money was secured by these proceedings to the extent the parties intended them to be used for that purpose, and they

did not intend, by the use of these words, to make the bank's right of recovery under the contract, depend on the decision of a court as to the success of the proceedings in establishing the right of Strong & Sons to the money against other claimants.

*Fourth.* The defendants, under the terms of the contract, are liable to pay to the complainant bank sixty per cent. of the moneys in their hands and to reassign the judgment to the bank.

*Fifth.* The payment to the bank must be made through the receiver, who is entitled to receive from Strong & Sons the whole amount in their hands, with interest from the date of the order for injunction on Strong & Sons' application in the supplementary proceedings. As against Strong & Sons, the receiver is entitled to interest from this date, and Taylor is entitled to the credit of this amount on the judgment of the bank. After settling his account with the court of his appointment, and deducting his fees, he will pay to Strong & Sons forty per cent. of the principal sum received by him from them with interest received by him on the whole principal sum to June 2d, 1892, the date when Strong & Sons refused to pay unless the judgment was canceled and interest on their forty per cent. from that date. Up to that time, Strong & Sons were entitled to act on the belief that the matter would be adjusted on the basis of the payment of the original amount in their hands, and as between them and the bank should not be charged with interest before that date. The balance the receiver will pay to the bank.

The costs of the complainant must be paid by Strong & Sons.